UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| William Felix Bossie,<br>    *Plaintiff*,<br><br>    *v.*<br><br>Michael J. Houle,<br>    *Defendant*. | Civil No. 3:10cv879 (JBA)<br><br><br><br>September 23, 2011 |

RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On September 2, 2010, Plaintiff William Felix Bossie filed a Seconded Amended Complaint [Doc. # 25] against Defendant Connecticut State Trooper Michael J. Houle alleging that Houle violated 42 U.S.C. § 1983 during his investigation of a automobile collision involving Bossie "by denying [him] the benefits of both a procedurally fair and accurate investigation into the facts and/or causes of the Collision on account of [his] race and/or national origin as a Hispanic male." Defendant now moves [Doc. # 31] for summary judgment. For the reasons stated below, Defendant's motion for summary judgment will be granted.

I.    Material Facts

On April 20, 2010 at approximately 6:00 a.m., while driving westbound on Interstate 84 in Waterbury, Connecticut, Mr. Bossie lost control of his car and collided with a vehicle driven by Paul Yankowski. (Accident Report, Ex. C to Def.'s Loc. R. 56(a)1 Stmt. at 2.) Mr. Bossie's car came to rest on the left side of the highway. (*Id.*) Trooper Houle was dispatched to the scene of the accident and wrote in his ensuing Accident Report that when he arrived he approached Mr. Bossie's car and spoke with Mr. Bossie. (Houle Aff. ¶ 3–4, Ex. A to Def.'s 56(a)1 Stmt.) He stated in the Accident Report and in his affidavit that Mr. Bossie claimed

that Mr. Yankowski's car collided with his after he attempted to change lanes into the left lane and Mr. Yankowski would not allow him to. (*Id.* ¶ 5; Accident Report at 2.) Mr. Bossie claims that "[t]he only words that . . . Houle stated to me at the accident scene were to ask me if I had any injuries, and to stay in my car. He refused to listen to or take my factual version of how the motor vehicle accident happened." (Bossie Aff. ¶ 2; *see also* Bossie Dep., Ex. D to Def.'s 56(a)1 Stmt. at 73:12–23.) Mr. Yankowski told Trooper Houle that after entering the highway, Mr. Bossie quickly moved into the left lane without signaling and that he was unable to avoid striking Mr. Bossie's car. (Accident Report at 2–3; Yankowski Aff., Ex. B to Def.'s 56(a)1 Stmt. ¶¶ 3–4.)

Mr. Bossie claims that Trooper Houle's Accident Report is "Ninety Five (95) percent factually false as written in its narrative form." (*Id.*) In addition to denying that Trooper Houle listened to his version of how the collision happened, Mr. Bossie alleges that while he was on an ambulance stretcher following the accident he saw Trooper Houle, while speaking to Mr. Yankowski, "visibly laughing at me, smiling at me, joking about me, and pointing his finger at me all while doing so." (*Id.* ¶ 3; Bossie Dep. at 73:12–23, 127:5–128:9.) Mr. Bossie also alleges that after he asked Trooper Houle to retrieve his cell phone from his car, he saw Trooper Houle "forcibly tear a Puerto Rican flag off of my motor vehicle." (Bossie Aff. ¶ 3.) He testified during his deposition that Trooper Houle "pulled my Puerto Rican flag that I had on my car back on the speaker . . . and took it and threw it . . . down." (Bossie Dep. at 74:15–25.) He similarly stated at a later point in the deposition that Trooper Houle "[w]ent in the back. Grabbed my flag. Threw it on the floor, and from right there he got up. He go out of my car. Close the door. Told the tow truck, 'Get it out of here.'" (*Id.* at 89:12–90:1.)

Mr. Bossie also testified that when he went to pick up his car after it was towed, his flag "was on the floor with a boot footprint on it and broke—with the stick broke." (*Id.* at 78:11–14.)

Although Mr. Bossie did not originally claim that he saw Trooper Houle break the flag's stick, only that Houle threw it on the floor, he later stated during his deposition that he recalled seeing Houle break the stick before throwing the flag. (*Id.* at 100:20–102:15.) Mr. Bossie did not hear Trouper Houle say anything about his Puerto Rican heritage at the accident scene. (Bossie Dep. at 91:5–92:5.)

Mr. Bossie states in his affidavit:

> The Defendant Michael J. Houle did not legitimately investigate the motor vehicle accident which is a subject of this case. . . . He falsified all the narrative parts of the Police Report. I also saw him throw parts of my car around the roadway, and kick parts of my car in the roadway. I also saw him forcibly tear, brake[sic], and remove a Puerto Rican flag that I had legally adhered to rear part of my motor vehicle.

(Bossie Aff. ¶ 4.)

Trooper Houle avers that at no point during the investigation did he "laugh or point at Mr. Bossie . . . , say or do anything that reflect on Mr. Bossie's race or ethnic status . . . , [or] consider the race or ethnic status of any of the parties in discharging my responsibilities." (Houle Aff. ¶¶ 13–14.) He concluded based on his investigation that Mr. Bossie violated Conn. Gen. Stat. § 14-236, failure to drive in an established lane, and cited Mr. Bossie for the violation. (*Id.* ¶ 12; Accident Report at 3.) Mr. Bossie entered a plea of *nolo contendere* to that charge. (Bossie Aff. ¶ 5.)

3

II. Discussion[1]

Although it is unclear from Mr. Bossie's second amended complaint or his memorandum in opposition[2] to Defendant's motion to dismiss under what substantive constitutional or statutory law Mr. Bossie seeks relief pursuant to 42 U.S.C. § 1983, his counsel clarified at oral argument that he claims Defendant violated Section 601 of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, and the First Amendment.

A. Title VI

Section 601 of Title VI provides: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

Mr. Bossie's Title VI claim against Trooper Houle necessarily fails as a matter of law because Title VI does not provide for individual liability, only liability against entities that receive federal financial assistance. *Chance v. Reed*, 538 F. Supp. 2d 500, 511 (D. Conn. 2008) (citing *Albra v. Advan, Inc.*, 490 F.3d 826, 831 (11th Cir. 2007); *Kelly v. Rice*, 375 F. Supp. 2d

---

[1] "Summary judgment is appropriate where, construing all evidence in the light most favorable to the non-moving party," *Pabon v. Wright*, 459 F.3d 241, 247 (2d Cir. 2006), "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(c)(2). An issue of fact is "material" if it "might affect the outcome of the suit under the governing law," and is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" based on it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Unsupported allegations do not create a material issue of fact." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

[2] On February 22, 2011, Mr. Bossie's counsel filed only a Local Rule 56(a)2 Statement and Affidavit in response to Defendant's motion for summary judgment, but after being granted leave by the Court, filed his memorandum in opposition on September 7, 2011.

4

203, 208 (S.D.N.Y. 2005); *Jackson v. Univ. of New Haven*, 228 F. Supp. 2d 156, 158 n.4 (D. Conn. 2002)). Additionally, by its terms, Section 601 refers to exclusion from, denial of the benefits of, or discrimination under a federally–funded program. In order to successfully maintain a claim under Title VI, Plaintiff must be able to demonstrate a nexus between the federal funds provided to the program at issue and the particular activity of the program about which he complains. *See Assoc. Against Discrimination in Emp't, Inc. v. City of Bridgeport*, 647 F.2d 256, 276 (2d Cir. 1981) ("[F]or a claimant to recover under Title VI against an employer for discriminatory employment practices, a threshold requirement is that the employer be the recipient of federal funds aimed primarily at providing employment."). Mr. Bossie alleges that Trooper Houle discriminated against him in the performance of his motor–vehicle accident investigation duties as a state trooper and his counsel stated at oral argument that he assumes that the Department of Public Safety receives some form of federal aid. However, he offers no evidence that any federal funds that may be provided to the Department of Public Safety are aimed at or concern Trooper Houle's actions in this case, i.e. the investigation and reporting of traffic accidents.

Accordingly, because Mr. Bossie brings this case against Trooper Houle and not a program that receives federal financial assistance, Defendant is entitled to summary judgment in his favor on Mr. Bossie's Title VI claim.

B.     First Amendment

Mr. Bossie claims that by removing the Puerto Rican flag from the back speaker of his car, breaking its stick, and throwing it to the ground, Trooper Houle violated his First Amendment right to free speech in the expression of pride in his Puerto Rican heritage.

5

Even interpreting the facts in the light most favorable to Mr. Bossie, his First Amendment claim fails as a matter of law.

The display of a flag constitutes political speech protected under the First Amendment. *See Spence v. Washington*, 418 U.S. 405, 410 (1974); *see also Barr v. Lafon*, 538 F.3d 554, 569 n.7 (6th Cir. 2008) ("[T]he display of the Confederate flag by a student constitutes political speech that is protected under the First Amendment."); *American Legion Post 7 of Durham, N.C. v. City of Durham*, 239 F.3d 601, 607 (4th Cir. 2001) ("[T]he [American] Legion's avowed attempt to demonstrate intensity of patriotic feeling by flying a very large flag implicates First Amendment interests."). It appears from Mr. Bossie's second amended complaint and his counsel's comments at oral argument that he claims Trooper Houle restricted his speech on the basis of viewpoint by removing the Puerto Rican flag in a disrespectful manner. His claim does not fit the normal contours of a First Amendment claim based on the display of a flag or other political imagery, however, because he does not allege that Trooper Houle acted pursuant to any statute or regulation that restricted Mr. Bossie's ability to express himself through the symbolism of his Puerto Rican flag or that Trooper Houle or any regulation prevented him from displaying his flag after retrieving his vehicle. *Cf. Sons of Confederate Veterans, Inc. v. Commissioner*, 288 F.3d 610, 626 (4th Cir. 2002) (Virginia statute restricting members of the Sons of Confederate Veterans from receiving special license plates bearing the confederate flag, in contrast to other Virginia statutes that authorized special plates for other organizations, was viewpoint discrimination in violation of the First Amendment).

In essence, what Mr. Bossie complains about in alleging that Trooper Houle removed and disrespected his Puerto Rican flag is Trooper Houle's implied expression of disdain

towards his Puerto Rican heritage as shown through his treatment of the flag. However, even taking the facts according to Mr. Bossie's version of the events, Plaintiff fails to show that Trooper Houle's behavior restrained or chilled Mr. Bossie's speech on the basis of his viewpoint in any way. *Cf. Byrne v. Rutledge*, 623 F.3d 46, 55 (2d Cir. 2010) (government may not "regulate speech in ways that favor some viewpoints or ideas at the expense of others") (internal quotations and citations omitted). Mr. Bossie does not claim that Trooper Houle prevented him from displaying the flag after he retrieved his vehicle, fined or punished him for displaying the flag, or threatened him in such a way that would have prevented him from displaying the flag in the future. Nor does he allege that Trooper Houle's actions somehow chilled or deterred him from expressing his Puerto Rican pride by reaffixing his flag. Although Mr. Bossie may have been deeply offended by what he perceived as the desecration of his flag and a statement regarding his Puerto Rican heritage, the impropriety of such a statement does not constitute the regulation of his speech or a prior restraint on his speech, and nothing in the factual record demonstrates that Trooper Houle's actions chilled, deterred, or otherwise influenced Mr. Bossie's ability to express his viewpoint. Defendant is therefore entitled to summary judgment in his favor on Mr. Bossie's First Amendment claim.

III.  Conclusion

For the reasons stated above, Defendant's motion [Doc. # 31] for summary judgment is GRANTED. The Clerk is directed to close this case.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 23rd day of September, 2011.